IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROYAL SURPLUS LINES INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. H-04-4158 |
| JONATHAN STEED, ANTONIO TORRES, Individually and as Administrator of the Estate of Antonio Torres, II, and IMELDA TORRES, | § § § § § § | |
| Defendants. | § § | |

ORDER

Pending before the Court is Plaintiff's Motion for Summary Judgment (Document No. 36). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted.

BACKGROUND

Plaintiff Royal Surplus Lines Insurance Company ("Royal") brings this declaratory judgment action seeking clarification of its duties and responsibilities to Defendant Jonathan Steed ("Steed") in an underlying state court action. This action stems from a lawsuit filed in the Statutory Probate Court of Hidalgo County, Texas ("Underlying Action") wherein Antonio Torres and Imelda Torres ("Torreses") assert claims against Delta Tau Delta International, Inc. ("DTD"), a local chapter of the DTD

fraternity (collectively "DTD Defendants") and Steed.  In the Underlying Action, the Torreses seek damages for the death of their son, Antonio Torres, II, resulting from injuries sustained when a vehicle driven by Steed collided with a tree on October 14, 2001.[1]  Steed and Antonio Torres, II,  both fraternity pledges, were returning from a fraternity event at the time of the accident.[2]  Apparently, Steed fell asleep while driving a vehicle owned by Antonio Torres, and the ensuing collision led to the death of Antonio Torres, II.

Royal issued two separate but related insurance policies to DTD that were in effect at the time of the accident.  Royal filed the instant action seeking declaratory judgment that it owes no duty to Steed under these two policies.  On March 8, 2005, this Court entered a default against Steed in the instant case because he failed to answer or otherwise appear in the litigation.  On November 30, 2005, Royal moved for summary judgment.

STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine issue as to any material

_____

[1]The Torreses settled their claims with the DTD Defendants in the Underlying Action but were unable to reach a settlement with Steed.  The Torreses proceeded to a jury trial against Steed, but the jury found no negligence on Steed's part and awarded the Torreses no damages.  The Torreses are currently appealing the verdict in the Underlying Action.

[2]A third individual riding in the vehicle at the time of the incident was also killed.

fact and [] the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view the evidence in a light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come "forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P. 56(e)). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994). Thus, the non-movant's burden cannot be satisfied by conclusory allegations,

unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.

*Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).  It is not the function of the court to search the record on the non-movant's behalf for evidence which may raise a fact issue.  *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992).

## LAW AND ANALYSIS

Royal filed the instant action seeking declaratory judgment.  The Declaratory Judgment Act provides "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2000).  Specifically, Royal asks the Court to declare that it has no duty to defend or indemnify Steed in the Underlying Action or defend or indemnify Steed under the terms of the policies issued to DTD.  The Court will begin its analysis with an examination of Royal's policies.

Primary Policy

Royal issued Commercial General Liability Policy Number KHA012556 ("Policy") to DTD, which was in effect at the time of the automobile accident.[3]  The

_____

[3]"Policy" shall be used to collectively denote the Commercial General Liability Coverage Form CG 0001 07 98, and the endorsements that modify the form.  The Court will identify specific provisions of the Policy when useful.

provision of the Policy entitled "Coverage A Bodily Injury and Property Damage Liability" ("Coverage A") provides, in pertinent part:

> [Royal] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.[4]  [Royal] will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

In addition to providing coverage to DTD, the Policy provides coverage for DTD "'employees' . . . , but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business."  In addition to providing certain coverage, the Policy enumerates situations wherein it provides no coverage.  Relevant to the instant case is paragraph 2.g of Coverage A, which dictates that the Policy does not apply to:

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any . . . "auto". . . owned or operated by or rented or loaned to any insured.
>
> Endorsement 31 ("Auto Endorsement") modifies the terms of the Policy.[5]

---

[4]The parties do not appear to dispute that the death of Antonio Torres, II constitutes "bodily injury" within the meaning of the Policy.

[5]In their response to the motion for summary judgment, the Torreses argue it is unclear which endorsements applied to the Policy at the time of the accident.  In support of this assertion, they direct the Court to nearly twenty pages of deposition testimony.

Paragraphs A and B of the Auto Endorsement modify the Policy to include limited coverage for injuries related to hired autos and non-owned autos.  Paragraph A provides limited coverage for "'bodily injury'. . . arising out of the maintenance or use of a 'hired auto' by you or your 'employees' in the course of your business." Paragraph B provides limited coverage for "'bodily injury' arising out of the use of a 'non-owned auto' by any person other than you in the course of your business."  The Auto Endorsement further indicates that Coverage A paragraph 2.g (discussed above) does not apply to the insurance provided by the Auto Endorsement.

Paragraph F.2 of the Auto Endorsement defines "hired auto" as "any 'auto' you lease, hire, rent or borrow. This does not include any 'auto' you lease, hire, rent or borrow from any of your 'employees', your partners or your 'executive officers' or members of their households." Paragraph F.3 of the Auto Endorsement defines "Non-owned auto" as "any 'auto' you do not own, lease rent or borrow which is used in connection with your business.  This includes 'autos' owned by your 'employees'. . . , but only while used in your business or your personal affairs."

---

However, the deposition testimony indicates, as does the documentation supporting Royal's motion for summary judgment, that Endorsement 31 was in effect during the occurrence of the accident.  Endorsement 31, which deleted endorsements 9 and 10 from the Policy, was added to the Policy in a previous year and adopted into the Policy at issue by a renewal certificate.  Accordingly, the Torres' argument that some ambiguity exists as to what endorsements apply fails.

The Auto Endorsement also enumerates those individuals and entities that qualify as insureds.  Paragraph D.2.D. includes as insureds: ". . . Fraternity Members, Member Candidates (pledges) and Employees of the Named Insured, **except while operating, or in any way using, a Non-Owned or Hired auto on behalf on an insured, no coverage is provided**." (emphasis in original).  Paragraph D.2.D.6 further provides: "None of the following is an insured . . . . [a]ny individual while using a hired or non-owned auto for or on behalf on any insured."

Umbrella Policy

In addition to the Policy, Royal issued to DTD Umbrella Policy No. KHN012555 ("Umbrella Policy").  The Umbrella Policy provides limited automobile coverage when an insured is entitled to coverage under the Policy.  Endorsement 3 of the Umbrella Policy provides:

> With respect to "Bodily Injury" or "Property Damage" arising out of the ownership, maintenance, operation, use, loading or unloading of any "Automobile," this policy is limited to the coverage provided for in the [Policy].  If coverage is not provided by [the Policy], coverage is excluded from this policy.

Moreover, endorsement 1 of the Umbrella Policy governs who is an insured under the Umbrella Policy.  It also indicates that only insureds under the Policy are insureds under the Umbrella Policy.

7

Duty to Defend and Duty to Indemnify Under Royal's Policies

Royal seeks declaratory judgment that Steed is not an insured and that it has no duty to defend or indemnify Steed in the Underlying Action.  Under Texas law, an insurer has no duty to defend a suit against an insured if the petition does not allege facts within the scope of coverage.  *Nat'l Union Fire Ins. Co. v. Merch. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex. 1997).  The duty to defend is determined by an examination of the allegations in the pleadings and in the insurance policy itself. *Id.*  Texas courts give liberal interpretation to the allegations in the petition, and doubt over whether allegations invoke coverage is resolved in favor of the insured.  *Id.*  "[A]n insurer is obligated to defend an insured as long as the complaint alleges at least one cause of action within the policy's coverage."  *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 99 F.3d 695, 701 (5th Cir. 1996).

However, Texas law also recognizes that when the underlying petition "alleges facts that, *prima facie,* exclude the insured from coverage, [then] the insurer has no duty to defend." *Taylor v. Travelers Ins. Co.*, 40 F.3d 79, 81 (5th Cir. 1994) (quoting *Adamo v. State Farm Lloyds Co.,* 853 S.W.2d 673, 677 (Tex. App.–Houston [14th Dist.] 1993, writ denied)).  Stated differently, "when the plaintiff's petition makes allegations which, if proved, would place the plaintiff's claims within an exclusion from coverage, there is no duty to defend."  *Gulf States Ins. Co. v. Alamo Carriage Serv.,*

22 F.3d 88, 90 (5th Cir. 1994) (citing *Fidelity & Guar. Ins. Underwriters v. McManus,* 633 S.W.2d 787, 788 (Tex. 1982)).

Similarly, "the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit." *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 821-22 (Tex. 1997). Generally, there can be no duty to indemnify if there is no duty to defend. *State Farm Lloyds v. C.M.W.,* 53 S.W.3d 877, 889 (Tex. App.–Dallas 2001, pet. denied). A court may determine no duty to indemnify exists if the reasons negating the duty to defend also negate any potential duty to indemnify. *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex. 1997).

Thus, the threshold issue before the Court is whether Steed is an insured under the Policy or the Umbrella Policy. If the Court determines Steed is not an insured under Royal's policies, then Royal owes no duty to either defend or indemnify Steed.

Underlying Action's Allegations

The state court petition in the Underlying Action asserts a claim of negligence against Steed and alleges Steed, while operating an automobile owned by Antonio Torres, caused the automobile to collide with a tree, which led to the death of Antonio Torres, II. The petition also alleges that Steed and Antonio Torres, II "were on a

special mission for [the DTD Defendants] at the time of the accident."[6] The preliminary

issue before this Court is whether Steed, as a pledge, is an insured under the Policy or

the Umbrella Policy, when he caused an automobile accident leading to the death of

Antonio Torres, II, also a fraternity pledge, while driving an automobile owned by

Antonio Torres, when Steed and Antonio Torres, II, were on a "special mission" for

the fraternity.

Policy Construction

    The language of the Policy indicates that "[Royal] will pay those sums that the

insured becomes legally obligated to pay as damages because of 'bodily injury'. . . to

which this insurance applies." Coverage A excludes any bodily injury arising out of the

use of automobiles owned, operated, rented or loaned to any insured.[7]   However,  the

Auto Endorsement modifies this exclusion to provide coverage for injury arising out of

the use of a hired auto or a non-owned auto.   The state court petition alleges Antonio

Torres, not the DTD Defendants or Steed, owned the vehicle involved in the accident

here.   Moreover, according to the petition, the vehicle was being used for a "special

_____

    [6]Because Royal seeks only declaratory judgment with regard to its  duty to defend
or indemnify Steed, the Court will not address Royal's duties as they relate to the DTD
Defendants.

    [7]The injuries sustained by Antonio Torres, II clearly "arise out of" Steed's use of
an automobile.

mission," which the Court will assume, without deciding, for the purposes of its analysis, qualifies as a business use. Thus, the Court will also assume that the vehicle driven by Steed qualifies as a non-owned auto as that term is used in the Policy.[8]

The next issue the Court must decide is whether Steed is an insured within the meaning of the Policy. This issue is hotly contested by the parties. Royal relies primarily on the language of the Policy to support its argument that Steed is not an insured. In contrast, the Torreses make conclusory assertions that Steed is an insured under the Policy and Umbrella Policy and that Royal should have known that Steed was an insured under its policies. The Torreses also argue that deposition testimony in the instant case demonstrates ambiguity in the Policy and the extent of its coverage.

When examining an insurance policy, if a term in the policy is ambiguous and open to more than one interpretation, the term is construed against the insurer. *State Farm Fire & Cas. Co. v. Vaughan,* 968 S.W.2d 931, 933 (Tex. 1998). A policy is not ambiguous, however, if it can be given a definite or certain legal meaning. *Id.; Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex. 1996). The determination of whether a contract is ambiguous is a question of law for

---

[8]There is no indication that the vehicle qualifies as a hired auto under the terms of the Policy. Nevertheless, the analysis under the hired auto provision would be the same because the coverage provided under the Auto Endorsement is the same for both non-owned and hired autos. No coverage would otherwise exist if the auto was neither a hired or non-owned because of the Policy's exclusions.

the court to resolve by looking at the contract in its entirety. *Columbia Gas Transmission Corp.,* 940 S.W.2d at 589.

In support of their assertion that the policy is ambiguous, the Torres – rather than deconstructing the Policy language to demonstrate its ambiguity – direct the Court to the deposition testimony of Edward Kirklin ("Kirklin"), the underwriter of the policies at issue.   The Torreses aver that during deposition, Kirklin "stated unequivocally that the policy did not cover an incident in which a pledge is driving an automobile that he does not own, but is involved in an accident that causes injuries or death to another pledge."[9] The Torreses then attempt to show contradiction by directing the Court to statements wherein Kirklin agrees that the fraternity itself would be insured in such an event.  For example, Kirklin acknowledges that "[c]overage is provided for the <u>entity</u> Delta Tau Delta Fraternity from . . . a member using someone else's auto that's not owned by Delta Tau Delta in the course and scope of the business of Delta Tau Delta." (emphasis added).

Upon analysis of the Policy's language, the Court determines the Policy is unambiguous, the term "insured" can be given a definite meaning, and the Policy can be construed as a matter of law. *See Vaughan,* 968 S.W.2d at 933.  As the pertinent

---

[9]The statement the Torreses refer to is one wherein Kirklin indicates that the driver of the car would not be insured.  Kirklin does not indicate that the entity would be insured in the example given.

provisions of the Policy have been laid out above, the Court need not readdress them all. Nevertheless, one paragraph of the Policy is key to divining whether or not Steed is an insured for his operation of Antonio Torres's automobile. Paragraph D.2.D of the Auto Endorsement includes as insureds: ". . . Fraternity Members, Member Candidates (pledges) and Employees of the Named, except **while operating, or in any way using, a Non-Owned or Hired auto on behalf on an insured, no coverage is provided**." (emphasis in original). Continuing on, the same paragraph reiterates: "None of the following is an insured . . . .[a]ny individual while using a hired or non-owned auto for or on behalf on any insured."[10]

The first portion of the paragraph indicates that pledges like Steed are insureds under the Auto Endorsement. However, these individuals lose insured status if they, *inter alia,* operate a non-owned vehicle on behalf of an insured. The subsequent provision also indicates individuals using a non-owned auto on behalf of an insured are not insured under the Policy. This provision indicates that when any individual, even one who would otherwise be insured under the Auto Endorsement, operates a non-owned automobile, that individual loses his insured status for such activity. These provisions, along with the entire paragraph, are consistent with the rest of the Policy.

---

[10]The Court notes that the Torreses fail to demonstrate how this provision conflicts with other provisions in the Policy or would otherwise render the Policy ambiguous.

They indicate that the Policy was written to protect individuals and entities from legal action resulting from another's use of an automobile on behalf of an insured.   The Policy cannot be read to protect the operator or driver of such automobile.   Indeed, the Policy is carefully drafted to exclude coverage in such situations.   Here, Steed, a fraternity pledge, was operating a non-owned vehicle on behalf of either himself, the DTD Defendants, or Antonio Torres, II, and such operation caused the death of Antonio Torres, II.   Pursuant to the Auto Endorsement, Steed, as an operator of a non-owned vehicle on behalf of an insured, is not an insured.

Turning to the Torreses' argument that Kirklin's statements are contradictory, the Court recognizes that a plain language reading of the Policy supports Kirklin's assertions and demonstrates that his statements are not, in fact, contradictory.   Under the Policy, in situations like the one in the Underlying Action where the vehicle's operator and the DTD Defendants were sued, the entities not operating the vehicle are insured and entitled to coverage, but the member operating the vehicle is not.   Kirklin is correct in his interpretation of the policy as providing coverage to the DTD Defendants but not to Steed as the operator.

Accordingly, the Court determines that, as a matter of law, Steed is not an insured under the Policy.   Therefore, Royal has no duty to defend Steed in the Underlying Action because the allegations in the Underlying Action relate to the

14

injuries Antonio Torres, II, sustained while Steed was operating a non-owned auto. *See Nat'l Union Fire Ins. Co.,* 939 S.W.2d at 141; *see also Taylor,* 40 F.3d at 81. Moreover, as Steed is not an insured under the Policy as a matter of law, Royal has no duty to indemnify Steed in the Underlying Action. *Griffin,* 955 S.W.2d at 84.

Steed is Not an "Insured" Under the Umbrella Policy

As the Court has determined Steed is not insured under the Policy, it follows that Steed is not an insured under the Umbrella Policy. The Umbrella Policy expressly provides that no coverage exists under the Umbrella Policy if no coverage exists under the Policy. Accordingly, Royal has no duty to defend or indemnify Steed under the Umbrella Policy. Given the foregoing, the Court hereby

ORDERS that Plaintiff's Motion for Summary Judgment (Document No. 36) is GRANTED. Steed, as the operator of the automobile, is not an insured under the Policy or Umbrella Policy. Royal has no duty to defend or indemnify Steed in the Underlying Action for claims against him stemming from such operation.

SIGNED at Houston, Texas, on this 23rd day of December, 2005.

_____

DAVID HITTNER

United States District Judge

15

16